## 75. ADAMS *v*. HAIGLER *et al.*

1. No error appears in the rulings of the court on the demurrers to the pleas, except as pointed out in the opinion.
2. The allegations of the petition were proved by the evidence introduced in behalf of the plaintiff, assuming it to be true; and the judgment granting a nonsuit was error.

Action on bond, from city court of Macon—Judge Hodges. June 12, 1906.

Argued February 7,—Decided May 28, 1907.

*Hardeman & Jones,* for plaintiff.

*M. Felton Hatcher,* for defendants.

HILL, C. J. Adams brought suit on a contractor's bond against Haigler and Frey as principals and Bazemore as surety. Demurrers were filed by the defendants to the petition, and were sustained by the trial court. On exceptions to this judgment, the Supreme Court reversed the judgment, and held that the "allegations in the original petition and the amendment seem to set forth a complete cause of action upon the bond," and that "the petition was not subject to any of the objections set forth in the demurrers." *Adams* v. *Haigler,* 123 *Ga.* 659, 51 S. E. 638. The opinion of the Supreme Court is comprehensive, and fully settles the law of the case relating to the allegations of the petition. We do not think any profitable purpose would be accomplished by making an extended statement of the case, as that has been done by the Supreme Court. The case is now before this court on exceptions to the refusal of the court to strike certain pleas, and to the granting of a nonsuit.

The defendants filed separate answers, denying the allegations of the plaintiff, except as to the execution of the contract. Haigler pleaded: (3) That at the time of entering into that contract another contract was made by Frey and himself with the plaintiff, in which it was agreed that the plaintiff should purchase the lumber and other things necessary in the construction of the house; (4) that after the signing of the original contract it was agreed between the plaintiff and himself that they would not carry out all its terms, and it was not carried out in all its terms, in that the plaintiff agreed to buy and to furnish to him certain lumber, and the plaintiff instructed him that it was not necessary to live up

to paragraph 5 of the contract, and not necessary for him to see the architect and get a written estimate, but that he (Haigler) could come to him (the plaintiff) when in need of money; (5) that it was agreed between the plaintiff and himself that paragraph 3 of the contract should not be carried out; (6) that it was agreed between them that no written direction from the architect was necessary for alterations in the plans or for extra work; (12) that in good faith he (Haigler) performed his work as far as possible, and the plaintiff was not damaged in any amount, for he was not subjected to any loss, and he got more than his money's worth. Other parts of Haigler's pleading were stricken on demurrer. The demurrer as to the foregoing paragraphs was overruled.

Frey, in his answer, repeated the foregoing averment of Haigler as to the agreement that the plaintiff should furnish lumber, etc., and set up further: (4) That after the signing of the contract he (Frey), with the consent of the plaintiff and of Haigler, withdrew from "said partnership" and the contract, and was released from any further interest or connection therewith; and (5) that up to the time of said withdrawal he had not failed or refused to carry out his contract, and it was at the suggestion of the plaintiff (he has learned since his withdrawal) that he gave up the contract, and it was admitted by the plaintiff as being satisfactory that he should withdraw. A demurrer to each of these paragraphs, as well as to the entire answer of Frey, was overruled.

Bazemore pleaded: (3) That at the time the contract attached to the petition was made he "knew of no other contract being signed between the parties thereto, and he never consented in any way to the change, abrogation, or alteration of said contract in any way, nor to the signing of any other contract in reference thereto;" (4) that "he is discharged by law from any liability on said bond, for the reason that said averments in the declaration admit said contract was abrogated, altered, and changed by the parties thereto by mutual consent, and without the knowledge and consent of" this defendant; (5) that "he is discharged from liability on said bond as surety, for the further reason that said changes, alterations, and abrogations of said contract increased the risk of said defendant as surety, and exposed the defendant to greater liability thereon, without his knowledge or consent;" (6)

that he is discharged as surety because the plaintiff purchased the material used in the construction of the building, in violation of the contract, defendant being willing to risk the judgment and experience of the parties whose faithful performance he guaranteed, but unwilling to accept and risk the judgment of the plaintiff in purchasing material, owing to the plaintiff's lack of experience in that line; (7) that he is discharged because the plaintiff violated paragraph 7 of the contract, "in that he purchased said material without giving five days' notice as required thereby, and without any notice or consent to or of this defendant;" (8) that he is discharged because the plaintiff failed to have the said lumber delivered at the proper times, which delay increased the cost of the building several hundred dollars, and which delay and purchases above set out increased the risk and liability of this defendant as surety, and since the filing of this suit he has learned that the plaintiff admitted that there were such delays, and put in a claim against the parties from whom the material was purchased, for a certain sum as damages for the delay; (9) that he is discharged because the plaintiff, without his knowledge or consent, paid out money in a different way and mode from that required by the contract; (10) that he is discharged because, without his knowledge or consent, the plaintiff consented to Frey's withdrawal from the contract, which consent increased the risk of the surety and exposed him to greater liability; (11) that he is discharged because the plaintiff accepted the house from the contractors; (12) that he is discharged because the plaintiff, in his declaration, avers that the said additions and alterations in the plan of work were made without being directed in writing by the architect, and without the consent or knowledge of the surety, as required by the contract, which likewise increased the risk of this defendant as surety; and (13) that he is not liable to the plaintiff in any amount, for the reason that the plaintiff has not been damaged, but has received more than his money's worth for every expense incurred. The plaintiff demurred generally and specially to Bazemore's answer, and the demurrer was overruled.

1. We will consider the pleas and demurrers in so far as we think the judgment of the court was erroneous thereon. The demurrer to paragraph 3 of Haigler's answer should have been sustained; the alleged change of the contract in the particular mentioned hav-

ing been the result of an agreement by all the parties thereto, as stated in this paragraph. Such consent novation could not be set up as a sufficient and valid defense by the contractors. The demurrer to paragraph 4 of Haigler's answer should have been sustained. It was wholly immaterial from whom Adams, the plaintiff, purchased the lumber to be used in building the house; it having been agreed, as alleged in paragraph 3, that he should purchase the "lumber and other things necessary in the construction of the house." Paragraph 5 of the contract provides how the contractors shall be paid, to wit, that the architect shall make an esti- mate of the material and labor put into the building during the preceding month, and this estimate shall be paid by the owner, de- ducting 15 per cent. to be paid on the completion and acceptance of the work. This clause of the contract was changed by the owner and Haigler, the contractor, who continued the work under the contract, and the change was for the benefit of the contractor. A change for the benefit of the contractor and with his consent certainly could not be pleaded as a defense to his failure to com- plete the contract. The demurrer to the sixth paragraph of Haig- ler's answer should have been sustained; it being alleged that the matter therein referred to was the result of an agreement between the parties to the contract. The twelfth paragraph of Haigler's answer sets up no issuable fact, but is a conclusion of the pleader, and constitutes no defense. It should have been stricken.

The third paragraph of the answer of the defendant Frey should have been stricken, for the same reason that the demurrer to para- graph 3 of Haigler's answer should have been sustained.

The demurrer to paragraphs 4, 5, 6, 7, 9, 10, 12, and 13 of Bazemore's answer should have been sustained. The questions made by these paragraphs of the surety's answer are fully covered by the decision of the Supreme Court overruling the demurrers to the petition. These allegations of the petition were held by the Supreme Court not to constitute a novation of the contract so as to increase the risk of the surety and to release him from the con- tract. "The act of Haigler in carrying on the work was, under the allegations of the petition, not a novation, but in pursuance of the original contract. . . Bazemore's risk as surety was not in- creased by any act of Adams, and . . the condition of the bond was broken by Haigler's failure to comply with the terms of the

contract." "Haigler was allowed, with the knowledge of Baze-more, the surety, to continue the work which Frey had failed to complete. Both Haigler and Frey were under an obligation to complete the work, and it was immaterial to the plaintiff which one actually did the work. Bazemore, the surety, was surety for both, and he was alike responsible for the failure of either." *Adams* v. *Haigler*, 123 *Ga.* 659, 664, 51 S. E. 638.

The decision of the Supreme Court, we think, reduced the defenses that could be made by the defendants (1) to showing that the delay in completing the work was due to the alterations and additions made by the plaintiff, and not to the fault of the contractors; (2) to any material changes in the contract not embraced in the admitted changes set out in the petition, and which were not consented to by the defendant Bazemore, and which increased his risk as surety. (3) The separate answer of Frey averred that the plaintiff had, with the consent of Haigler, released him from compliance with the contract. This made a sufficient defense as to him, if true. Except as herein ruled, we think the judgment of the trial court in overruling the demurrers to the pleas was right.

2. We think the court erred in sustaining the motion to nonsuit. The question on the nonsuit is, not whether the plaintiff was entitled to recover, but whether his evidence supported the case made by the allegations of his petition. An examination of the evidence will show that the plaintiff substantially supported the allegations of his petition. The damage claimed under the contract was composed of three items: (1) The sum of $426.03, besides interest, expended by the plaintiff in excess of the contract price in the purchase of material and in the payment of labor; (2) $40, the rental value of the house between the date fixed in the contract for the completion of the house and the date when it was sufficiently completed for occupation; (3) $33.60 for additional work necessary to be done, and the material therefor, in order to complete the house in accordance with the contract. In support of these items the plaintiff introduced the contract and bond sued on, and showed, by his own testimony and that of his architect, that the contractors commenced work under the contract. In a few days one of the contractors, Frey, abandoned the work without the consent of the plaintiff, and the other contractor, Haigler, continued under the contract. He could not get credit for the mate-

rial, nor could he pay for the labor, unless Adams would agree to be responsible. It was agreed between Adams and Haigler that Adams would furnish the money to meet the pay rolls and would pay the bills for the material whenever they were approved by Haigler. The payments made by Adams for material and labor, according to the evidence, exceeded the contract price by $426.03. There seems not to have been any proof submitted by the plaintiff in support of his claim for $40 as the rental value of the house for the month he was delayed in getting into it. The item of $33.60, covering additional work and materials necessary to complete the house in accordance with the terms of the contract, was proved by the testimony of the architect and of the plaintiff. The evidence introduced in behalf of the plaintiff, assuming it to be true, proved his case as laid, except as to the item of $40 above mentioned; and it was error to grant the nonsuit.

*Judgment reversed.*